ELECTRONICALLY FILED
Dec 02 2022
U.S. DISTRICT COURT
Northern District of WV

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg Division**

| | |
|---|---|
| MARY BETH CARDER,<br><br>           Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>           Defendants. | Civil Action No. 1:22-CV-150 (Kleeh) |

## COMPLAINT

Plaintiff Mary Beth Carder, by counsel, files this Complaint against Defendants Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian"). In support of her claims, Ms. Carder alleges:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

3. To accomplish Congress's goals, the FCRA contains several requirements to protect consumers, including §§ 1681c, 1681e(a), 1681e(b), and 1681i, which are among the statute's cornerstone provisions.

4.      Absent several narrow exceptions, § 1681c prohibits consumer reporting agencies from reporting adverse items of information that antedate the report by more than seven years. This section of the FCRA "reflects a policy choice to allow dated adverse credit data to 'age off' a credit report because such information might otherwise indefinitely hamper the borrowing capabilities of now-reformed individuals." *Beseke v. Equifax Info. Servs. LLC*, No. CV 17-4971 (DWF/KMM), 2019 WL 6250756, at *3 (D. Minn. Nov. 22, 2019), motion to certify appeal denied, No. CV 17-4971 (DWF/KMM), 2020 WL 133289 (D. Minn. Jan. 13, 2020) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 863 (3d Cir. 2014)). To further strengthen the protections of § 1681c, the FCRA also requires consumer reporting agencies to "maintain reasonable procedures designed to avoid violations" of § 1681c. 15 U.S.C. § 1681e(a).

5.      Along with these provisions, whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires the CRA to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on credit reporting agencies ("CRA"). *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that " 'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting Webster's Third New International Dictionary 133, 1396, 1771 (1993)).

6.      Finally, to further protect consumers, the FCRA gives consumers the right to dispute the completeness or accuracy of any item of information in his or her file. *See* 15 U.S.C. § 1681i. This is one, if not the most, of the vital and effective protections of the FCRA.

7. Section 1681i(a)(1)(A) sets forth the CRA's obligation whenever a consumer notifies a CRA that the consumer disputes the completeness or accuracy of information in the consumer's file. When a CRA receives a consumer's dispute, it is obligated to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A). This investigation must be a "detailed inquiry or systematic examination" and cannot be superficial. *Burke*, 2011 WL 1085874, at *4 (quoting *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 (4th Cir. 2004)).

8. In this case, Equifax and Experian inaccurately reported Ms. Carder as legally obligated to pay her mortgage loan, even though the mortgage had been discharged through a Chapter 7 bankruptcy more than two decades earlier. Equifax and Experian continued this derogatory reporting even though they knew Ms. Carder had filed for bankruptcy, the CRAs having previously reported it in her credit file. This conduct violated the FCRA, 15 U.S.C. §§ 1681c(a), 1681e(a), and 1681e(b).

9. After Ms. Carder disputed the inaccurate information with Equifax and Experian and provided them with copies of her bankruptcy discharge, they failed to properly investigate her disputes and continued to report her as personally liable for the mortgage. This conduct violated the FCRA, 15 U.S.C. § 1681i.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Carder's claims occurred in this District and Division.

## PARTIES

12. Ms. Carder is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

13. Equifax is a foreign limited liability company doing business in West Virginia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

14. Experian is a foreign corporation authorized to do business in West Virginia. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

### *Ms. Carder's Mortgage is Discharged*

15. In June 1995, Ms. Carder purchased her family home using a home mortgage loan from Green Tree Financial Servicing Corporation.

16. In early 2000, Ms. Carder filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia, Bankruptcy Petition No. 1:00-bk-10437.

17. Ms. Carder included her home mortgage loan in her bankruptcy filings.

18. On June 21, 2000, the Bankruptcy Court entered an order, "Discharge of Debtor" that discharged Ms. Carder's legal liability on the home mortgage loan and her other debt obligations.

19. Accordingly, Ms. Carder's home mortgage loan debt obligations were discharged in the bankruptcy proceeding.

20. Upon information and belief, Shellpoint Mortgage Servicing ("Shellpoint") began servicing Ms. Carder's home mortgage loan after Green Tree's successor, Ditech Financial, LLC, filed bankruptcy in 2019.

### *Inaccurate Credit Reporting*

21. In December 2020, Ms. Carder reviewed her credit reports and noticed her mortgage account was reporting on her credit in a manner that was inaccurate and derogatory.

22. For example, the mortgage tradeline did not reference it had been included in bankruptcy.

23. In addition, the mortgage was reporting with a status of "over 120 days past due," with a $6,821 past due balance and a total balance of $20,912.

24. This information was incorrect. Ms. Carder was not past due on her mortgage and she did not have an outstanding balance because the debt had been discharged in bankruptcy more than two decades earlier.

25. Equifax and Experian published this information in her credit file, even though it was well past the seven-year period in which Equifax and Experian were allowed to report this information.

26. Equifax and Experian did not maintain reasonable procedures to prevent the reporting of this inaccurate information. For example, they did not cross reference Ms. Carder's prior bankruptcy filing with this tradeline, which would have demonstrated the debt was too old to be reported.

27. They also did not reference Shellpoint's date of first delinquency with the prior delinquencies that had been reported about Ms. Carder's mortgage by prior loan servicers.

28. On December 23, 2020, Ms. Carder mailed dispute letters to Equifax and Experian disputing the incorrect information about her mortgage.

29. These letters explained that her mortgage was discharged in bankruptcy. She included a copy of the bankruptcy docket, along her with bankruptcy petition number.

30. In response to Ms. Carder's disputes, both Equifax and Experian failed to conduct adequate and substantive investigations.

31. Instead, they each relied entirely on Shellpoint's investigation and dispute response and took no independent action to investigate Ms. Carder's dispute, even though she sent documentation showing the reporting about her mortgage was incorrect. As a result, Equifax and Experian continued to report that Ms. Carder was personally liable for the mortgage and that the mortgage had a negative status.

32. This information was still incorrect because Ms. Carder did not owe any money on her mortgage because it was discharged in her bankruptcy.

33. Therefore, Ms. Carder mailed a follow-up dispute letter to Equifax and Experian in March 2021.

34. Ms. Carder's dispute letter again explained her mortgage had been discharged and that the mortgage should not be reporting as past due or with an outstanding balance. She included a copy of her bankruptcy petition and discharge.

35. In response to Ms. Carder's disputes, Equifax and Experian again failed to conduct an adequate and substantive investigation, and the inaccurate information remained on Ms. Carder's credit reports.

36. As a result of the Defendants' conduct, Ms. Carder suffered significant actual damages, including a decreased credit score, embarrassment, humiliation, and other emotional distress.

## *Defendants' Violations Were Willful*

37. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).

38. A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

39. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

40. A lack of any internal procedures to anticipate or prevent inaccuracy is also willful. *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017).

41. Each of the Defendants have received thousands of disputes and other complaints regarding Shellpoint tradelines—sufficient to require a reasonable company to at least examine or investigate further before blindly accepting Shellpoint's further reporting.

42. Shellpoint has also been sued repeatedly for insufficiently investigating consumer disputes under the FCRA. The Defendants have been co-defendants in many of these lawsuits. Even if they were not co-defendants, many of these lawsuits are publicly available on PACER and result in a resolution correcting Defendants' credit reporting.

43. Despite this notice, the Defendants continue to blindly accept Shellpoint's reporting and dispute investigations, even when that reporting contradicts the information in their own files or the information submitted by consumers about Shellpoint tradelines.

44. For example, if Equifax or Experian had reasonable procedures to assure the maximum possible accuracy of Ms. Carder's Shellpoint tradeline, they would have recognized immediately the account was discharged in her prior bankruptcy filing.

45. In fact, Equifax and Experian have a long history of government enforcement actions, consumer complaints, and lawsuits establishing they and the other national consumer reporting agencies systematically inaccurately report information related to debts discharged in Bankruptcy. *See, e.g.*, *White v. Experian Info. Solutions, Inc.*, Case No. 8:05-cv-01070 (C.D. Cal.); *Acosta v. Trans Union*, 243 F.R.D. 377, n.3 (C.D. Cal. 2007) (citing a bankruptcy lawyer's survey of approximately 900 clients found that 64% of TransUnion reports and 66% of Equifax reports erroneously list one or more discharged debts as due and owing).

46. In *White*, Defendants were the subject of a national court injunction requiring them to ensure that they did not report tradelines that were included in Chapter 7 discharges that were inconsistent with the information received in their public records data.

47. Though that injunction is not governing as to the specific violations here, it certainly provided the Defendants actual notice sufficient to have predicted and prevented the inaccuracies addressed in this complaint.

48. Despite the frequent inaccuracies related to accounts discharged in bankruptcy, Equifax and Experian continue to maintain unreasonable procedures regarding the manner in which they publish bankruptcy-related information.

49. For example, Equifax and Experian knew of Ms. Carder's bankruptcy discharge.

50. However, upon information and belief, despite the abundance of notice available to Equifax and Experian regarding the frequent errors in its bankruptcy related credit information,

they do not independently review the information they receive from their furnisher customers, like Shellpoint.

51. Instead, Equifax and Experian merely parrot the information about accounts included in bankruptcy they receive from furnishers, without taking any additional steps to ensure the accounts are updated after a consumer receives a discharge.

52. Upon information and belief, Equifax and Experian have actual knowledge of the problems associated with their systematic, erroneous reporting of one or more discharged debts as due and owing, yet they deliberately choose to ignore these problems because reviewing and/or crosschecking the data would reduce their bottom line.

53. Compounding this issue, as a standard practice, Experian and Equifax do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

54. Upon information and belief and consistent with their standard policies and procedures, Experian and Equifax automatically generated their "investigation" results once

Shellpoint verified the status of Ms. Carder's mortgage, and they did not take any additional actions to verify the accuracy of the information the furnisher provided.

55. Instead, Equifax, and Experian blindly accepted Shellpoint's version of the facts and continued to report the inaccurate, derogatory information on Ms. Carder's credit reports.

56. Experian and Equifax continue the practice of parroting the furnisher's response despite numerous lawsuits alleging (and establishing) they fail to conduct a reasonable investigation under the FCRA.

57. Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses and thus hurt their profits.

58. Therefore, at all times relevant to this Complaint, Equifax's and Experian's conduct was willful and carried out withreckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious they should have known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681c(a)

59. Ms. Carder incorporates each of the preceding allegations.

60. As described above, Equifax and Experian failed to remove the adverse information regarding Ms. Carder's discharged Shellpoint Mortgage that antedated Ms. Carder's report by more than 7 years.

61. Because of Equifax's and Experian's conduct, Ms. Carder suffered actual damages, including credit damage and emotional distress.

62.     Equifax's and Experian's conduct was willful, rendering them liable for statutory and punitive damages under 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax and Experian liable under 15 U.S.C. § 1681o.

63.     As a result of their FCRA violations, Equifax and Experian are liable for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. § 1681n.

### COUNT TWO:
### VIOLATION OF FCRA, 15 U.S.C. § 1681e(a)

64.     Ms. Carder incorporates each of the preceding allegations.

65.     Equifax and Experian violated § 1681e(a) of the FCRA by failing to maintain any procedure to prevent obsolete information about Ms. Carder's mortgage from appearing in her credit reports.

66.     Because of Equifax's and Experian's conduct, Ms. Carder suffered actual damages, including credit damage and emotional distress.

67.     Equifax's and Experian's conduct was willful, rendering them liable for statutory and punitive damages under 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax and Experian liable under 15 U.S.C. § 1681o.

68.     As a result of their FCRA violations, Equifax and Experian are liable for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. § 1681n.

### COUNT THREE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)

69.     Ms. Carder incorporates each of the preceding allegations.

70.     Equifax and Experian violated § 1681e(b) of the FCRA by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning Ms. Carder.

71. Because of Equifax's and Experian's conduct, Ms. Carder suffered actual damages, including credit damage and emotional distress.

72. Equifax's and Experian's conduct was willful, rendering them liable for statutory and punitive damages under 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Equifax and Experian liable under 15 U.S.C. § 1681o.

73. As a result of their FCRA violations, Equifax and Experian are liable for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. § 1681n.

## COUNT FOUR:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i(a)

74. Ms. Carder incorporates each of the preceding allegations.

75. Equifax and Experian violated multiple sections of § 1681i, including: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Shellpoint with all the relevant information regarding Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of § 1681i(a)(4); and (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

76. Because of Equifax's and Experian's conduct, Ms. Carder suffered actual damages, including credit damage and emotional distress.

77. Equifax's and Experian's violations of § 1681i were willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Carder demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorney's fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**MARY BETH CARDER**

By: _____

Digitally signed by Michael Nissim-Sabat
Date: 2022.12.02 13:46:24 -05'00'

Michael C. Nissim-Sabat (WV State Bar No. 12233)
Bren J. Pomponio (WV State Bar No. 7774)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston WV 25301
Phone:  304.344.3144
Fax:    304.344.3145
Email: michael@msjlaw.org
Email: bren@msjlaw.org

*Counsel for Plaintiff*